FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2017 MAY 30  PM 12: 46

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No:  '17 - CV - 01302

---

Regina Davis also known as Regina Robertson,

*Plaintiff(s);*

Vs.

LaDawn Westbrook

*Defendant (s)*

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Regina Davis, who is representing herself in this matter, files her complaint and Jury Demand and in support thereof, avers as follows

## PRELIMINARY STATEMENT

Plaintiff and her disable son are tenants residing at 3501 Columbine Street, Denver Colorado  under a one year lease contract from February 13, 2016 through March 31, 2017, which has been converted to a month to month  with defendant, La Dawn *SEE EX B* Westbrook, who is a Senior Real Estate Specialist (SRES) a Certified Distressed Property Expert (CDPE) Master Certified Negotiation Expert (MCNE) and a Five Star Professional since 2012, a Colorado Real Estate Broker employed with Exist Realty Cherry Creek. The defendant continually introduced herself as described above in all of her harassing, bullying and intimidating correspondence, not only to plaintiff but to Colorado Affordable Legal Services (letter dated 9/20/16); Atlantis Community, Inc, an Independent Living Specialist for People with Disabilities;(letter dated March 29, 2017); Beth McCann, District

Attorney for Second Judicial District, written by Sabrina Miller, Victim Advocate; *SEE EX E*
Children Hospital Colorado, Department of Rehabilitation-Letter of Medical Necessity
requesting that defendant modify the home including wheelchair accessibility, grab bars in *SEE EX F*
the bathroom for mobility to the toilet and shower including wheelchair accessibility. All
requests have been summarily denied. Plaintiff, Regina Robertson, and her family have
been discriminated against and continually harassed and intimidated and subjected to a
hostile living environment to deny her housing. Throughout the time she has lived at the
property the defendant has threatened to throw her out for one reason or another. Plaintiff
and her family live in constant fear that the defendant will enter her home and throw her
property out on the street while she is away from the home all of which is in violation of the
Fair Housing Act, 42 U.S.C. SECTION 3601 et seq.to extend the guarantee of fair housing
to handicapped individuals.  Congress also authorized the Secretary of the United States
Department of Housing and Urban Development to promulgate regulations to implement
the Fair Housing Act. 42U.S.C. Section 3614a.

Defendant, LaDawn Westbrook, is a Real Estate Broker, who is in the business of
collecting a debt using mails, email and telephone, and the defendants regularly attempt to
collect such debts owed, a practice deemed covered under the Federal Fair Debt Collections
Practices Act and is a "debt collector" as that term is defined by USC section 1692a (6).

The Plaintiff's seek declaratory and injunctive relief enjoining the Defendant from
violating their Fair Housing rights by evicting the plaintiffs from the resident that they
should be entitled to Fair Housing rights and its implementing regulations.

## JURISDICTION

1.  Jurisdiction of this Court arises under 28 USC section 1331, 15 USC section 1692k(d)
    and 28 U.S.C sections 2412(a) and (b).
2.  This action arises out of the defendant's violations of the Fair Debt Collection Practices
    Act, 15USC section 1692 et seq. ("FDCPA")
3.  This action arises under the Fair Housing Act, 42 U.S.C. Sections 3601,
4.  Declaratory and injunctive relief is sought pursuant to 28U.S.C. Section 2201, 42 U.S.C.
    Section 3613(1) and 42 U.S.C. Section 12133, as Rules 57 and 65 of the Federal rules of
    civil Procedure.

## VENUE

5.  Venue is proper in the United District Court for the District of Colorado as all acts and transactions occurred here, the Plaintiff resides here, and all Defendants transact business here.

## PARTIES

6.  The Plaintiff, Regina Davis, is a natural person who resides in the city of Denver in the state of Colorado, and is a "consumer" as that term is defined by 15 USC section 1692a (3)(Fair Debt Collation Practices Act.

7.  Defendant LaDawn Westbrook is a "debt collector" as that term is defined by USC section 1692a6). The Purpose and intentions, of defendant, LaDawn Westbrook, in this matter is the collection of a debt using mails, emails and telephone, and the Defendants regularly attempt to collect such debts owed, a practice deemed covered under the Federal Fair Debt Collections Practices Act.

8.  The plaintiff, Regina Davis, is an individual whose son is a disabled person as defined under the Fair Housing Act 42 U.S.C. 3601

## FACTUAL ALLEGATIONS

9.  Plaintiff, Regina Davis, is a tenant under a lease agreement owned by defendant LaDawn Westbrook located at 3501 Columbine street Denver, Colorado. Throughout the time plaintiff and disabled son has lived at the property, she has been discriminated against by the defendant. The defendant has continuously harassed and intimidated plaintiff and her disabled son subjecting them to live in a hostile environment. The defendant has talked down to plaintiff throughout the time she has lived at property and has threaten to throw her out for one reason or another.

10. On September 4, 2016 defendant threaten plaintiff by stating in a letter, in part, that "...you are late again Paying rent therefore you will voluntarily be moving out of the premises located at 3501 Columbine (West unit) without incident by September 18,2016 providing rent is paid for the month. If rent is not paid by September 6 with late fees, eviction date will be September 11, 2016..."

11. And on September 11, 2016 threatens plaintiff by stating in a letter, in part, that

*"Tenant was late in September and has been informed she needs to be out by September 20, 2016. If October rent is paid by September 18, tenant may stay until October 9 and must be fully moved out on or before October 9, 2016 or her belongings will be removed for her…"*

12. Plaintiff lives in constant fear that defendant will enter her home and throw her property out on the street while she is away from the home. Defendant placed a lock box on the door allowing anyone to enter plaintiff residence. In fact, plaintiff's disabled son was in the process of getting dressed when strangers entered the house and in his room.

13. These actions were all unlawful housing practices and in violation of housing laws because was defendant discriminated against plaintiff in housing because of her race, disability, and/or gender.

14. Plaintiff has not missed one payment during the term of the lease agreement and all late payments was paid in full; even though at times plaintiff was charged $200.00 for being 4 days late.

15. So the debt that is the subject of this lawsuit is the lease dated February 13, 2016, (Exhibit A) between plaintiffs, as tenants and defendants, as landlord.

16. Plaintiff made many requests that defendant modify the rental unit to accommodate the disabled son condition, all were denied, as requested by the Atlantis Community Inc, which is a organization to help people with disabilities   see exhibit ▬▬ *D*

17. "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer; and in violation of 15USCA Section 2692e (9): The use or distribution of any written communication which simulates or is falsely represented to be a document….which creates a false impression as to its source , authorization, or approval and in addition these representations also violated 15 USCA SECTION 1692e(2): The false representation of (A) the character, amount, or legal status of any debt;

18. As a consequence of the Defendants' action the Plaintiff has suffered economic loss, quiet enjoyment, loss of self-esteem and peace of mind, and has suffered emotional distress, humiliation and embarrassment.

19. As a direct and proximate result of the aforesaid actions, the Plaintiff has suffered the aforementioned damages including but not limited economic loss, loss of profits, loss of self-esteem and peace of mind, and has suffered emotional distress, humiliation and embarrassment.

## CLAIM FOR RELIEF FOR VIOLATIONS FO 15 USC 1692e seq.

20. All prior paragraphs are in incorporated herein as if set forth in full.

21. The deliberate acts if the Defendants and its representatives, employees and/or agents constitute numerous and multiple violations of the FDCPA, Including but not limited to 15 USC SECTION 1692D PREFACE, D (3) SECTION 1693E PREFACE, E(2)(A), E(4)E(5),E(9),E(10) AND 1692F PREFACE, F(10 AND F(6)

22. The Defendant's violations are multiple, willful and intentional.

23. Pursuant to  FDCPA section 1692K the Plaintiff is entitled to actual damages, statutory damages up to $1,000.00, reasonable attorney's fees and costs.

24. The Plaintiff is entitled to and hereby demands a trial by jury. US Const. amend. 7. Fed. R. Civ. Pro. 38.

## CLAIMS FOR RIGHTS UNDER THE FAIR HOUSING ACT

25. Plaintiff re-allege and incorporate herein by reference the allegations contained in paragraphs 1 through 23.

26. Defendants and each of them are violating Plaintiff rights under the Fair Housing Act, 42 US.C Sections 3601, et seq, and its implementing regulations by:

   a.   Denying and otherwise making housing unavailable to Plaintiff and her disable son because of his disability;

   b.   Denying reasonable accommodations in rules, policies, or practices so as to afford people with disabilities, Plaintiffs an equal opportunity to live in a dwelling;

## DECLARATORY RELIEF & INJUNCTIVE RELIEF

27. Plaintiff re-allege and incorporate herein by refence paragraphs 1 through 25 above as if fully set forth herein:

28. The Defendant, LaDawn Westbrook, has threatened to proceed with an eviction to remove plaintiff and her disable son, in contravention of complying with the Fair Housing Act: see Exhibit ___.

29. Plaintiff alleges that Defendant is prevented from pursuing an eviction during the pendency of an FHA act violation.

## PRAYER

Plaintiff prays that the court grants the following:

The Court should enter and order an Injunction preventing the Defendant is  from continuing with an Forcible Entry and Detainer actions against Plaintiff during the pendency of this lawsuit. *SEE EXG*

That the Court make a Declaration declaring the following:

1. That the Defendant by treating the plaintiffs in such a way that is alleged in 25 (a) and (b) violates the FHA as set out in Fair Housing Act:

2. That Defendant by using false representation and deceptive means to collect or attempt to collect any debt has violated the Federal Debt Collection Practice Act; 15USCA 1692 (9)

3. Actual damages under 15 USC Section 1692k(a)(1).

4. Statutory damages under 15 USC setion1692k(a)(2)(A)

5. Damages under 28 USC @ 2022.

6. Damages under The Fair Housing Act

7. Compensational damages in the amount of $250,000

8. Reasonable attorney's fees and costs if any pursuant to 15 USC SECTION 1692K(A)(3)

9. Such other and further relief as the Court deems just and proper. Wherefore, Plaintiff respectfully request entry of judgement for damages as set forth herein, all costs and expenses, declaratory judgement, pre-and post–judgement interest and reasonable

attorney's fees is any, in an amount to be determined at trial, and for such other and further relief as this Court may deem just and equitable.

Respectfully submitted this May 27, 2017

*Regina Davis*

Regina Davis, Plaintiff

3501 Columbine Street,

Denver, Colorado 80205

Telephone: 720-363-9450

# INDEX OF EXHIBIT

LEASE AGREEMENT                                                A

EMAIL: FROM LADAWN WESTBROOK                                   B

COLORADO AFFORDABLE LEGAL SERVICES                            C

ATLANTIS COMMUNITY, INC                                        D

BETH CANN, DISTRICT ATORNEY                                    E

CHILDREN HOSPITAL OF COLORADO                                  F

DEMAND FOR COMPLIANCE OR RIGHT POSSESSION NOTICE             G
AND NOTICE TO QUIT

EXHIBIT
A

## RESIDENTIAL RENTAL AGREEMENT
## THIS IS A LEGALLY BINDING AGREEMENT. READ IT CARFULLY.
## IF YOU DO NOT UNDERSTAND, CONSULT LEGAL COUNSEL.

THIS AGREEMENT, entered into this 13 day of February, 2016, by and between LaDawn Westbrook, referred to as the Landlord, residing at 6139 Reed Way Arvada , CO 80003 Regina Gail Robertson Davis residing 3501 Columbine St Denver, CO 80205 , referred to as the Tenant, set forth as follows:

1.      TERM:  Twelve (12)  Months, commencing February 13, 2016 and ending March 31, 2017, subject, however, to earlier termination as hereinafter set forth.

2.      PREMISES RENTED: Single family residence, with garage, commonly known as 3501 Columbine Street Denver CO  80205.

3.      RENT:  The rent for the term is Sixteen Thousand Eight Hundred Dollars ($16,800).  The Tenants will pay this rent to the Landlord as follows:  the sum of Fourteen Hundred  Dollars ($1400) for each month shall be paid in full, in advance, on or before the 1st day of each month and no deductions will be allowed in the rent without the prior written consent of the Landlord.  The Tenants agree to mail each installment to the Landlord at the address above indicated in a timely fashion so as to insure delivery of the same on or before the 1st day of each month. In the event that any monthly payment shall be overdue for a period in excess of three (3) days, the Tenants shall pay a late charge equal to Fifty Dollars ($50.00) per day, as added rent, for each day the monthly rent remains overdue.  Rent will be adjusted at the end of the first year lease period only if Landlord's house payment increases due to taxes and escrow amounts by the actual amount of the increase.

4.      PRORATIONS:  All pro-rations made during the term of this tenancy shall be made on the basis of a thirty (30) day month.

5.      LATE & RETURNED CHECK CHARGES; If a check is returned by Tenants' bank for any reason, Tenants understand and agree that there will be a $50.00 returned check charge in addition to the full rent and late charge.

6.      AGREEMENT TO LEASE AND PAY RENT:  The Landlord leases the premises to the Tenants for the term of this Lease.  The Tenants agree to pay the rent and other charges as required in this Lease.  The Tenants agree to do everything required of Tenants in this Lease.

7.    DEFAULT: If the Tenants fail to pay rent, or any part of the rent; fails to comply with any other term of this Lease; or vacates the premises at any time during the term of this Lease, then the Landlord may re-enter and take possession of the premises by any lawful means and remove the Tenants and any other person on the premises and their property, by dispossess proceedings, or by other lawful means, without being liable in any way. The Landlord may re-rent the premises and any rent received by the Landlord shall be used first to pay Landlord's expenses in getting possession and re-renting the premises, including without being limited to, reasonable legal fees and costs, fees of brokers, advertising costs and the cost of cleaning, repairing and decorating the premises, and second to pay any amounts the Tenants owes under this Lease. The Tenants shall pay to the Landlord any amount owed under this Lease, less, if the Landlord re-rents the premises, any amounts received from the new tenants and not used by Landlord to pay the expenses referred to above.

8.    TERMINATION: In the event of the happening of one or more of the above defaults of this Lease, the Landlord may, without notice, cancel this Lease by giving the Tenants a 3-day written notice stating the date that the term will end and demanding that the Tenants vacate the premises. On that date, the term and the Tenants'' rights under this Lease shall automatically end and the Tenants must leave the premises and give the Landlord the keys. Thereafter, the Tenants shall continue to be responsible for rent, expenses, damages and losses.

9.    RE-RENTING: Tenants agree that Landlord shall have the right to show the Property to prospective tenants or buyers at reasonable times for a period of sixty (60) days prior to expiration of this tenancy, or upon having received written notice from Tenants of any intention to vacate. In the event Tenants choose to vacate the Property prior to the end of the term of this Agreement, or any agreed extension thereto, Tenants shall be responsible, in addition to any other charges provided for herein, for the Landlord's loss of any rent under this Agreement. In addition, in the event Tenants chooses to vacate the Property prior to the end of the term of this Agreement, or any agreed extension thereto, the Tenants shall be responsible for all costs related to re-renting the Property, including but not necessarily limited to advertising costs and a rental fee equal to one month's rent, payable to the rental agent upon finding a new tenants acceptable to the Landlord, if the Tenants has not found a new tenants acceptable to the Landlord. Landlord is not obligated to deduct, but may at its option, deduct any of the above expenses from the Security Deposit. If the above expenses exceed the Security Deposit, the Tenants shall be responsible for paying the excess costs to the Landlord.

10.     END OF TERM: The Tenants agrees that at the end of the term of this Lease, Tenants will surrender the premises in as good or better condition as now, except for ordinary wear and damage by the elements.

11.     SUCCESSORS: Unless otherwise stated, this Lease is binding on all parties who lawfully succeed to the rights or take the place of the Landlord or the Tenants.

12.     CHANGES: This Lease can be changed only by an agreement in writing signed by the parties to this Lease.

13.     USE OF PREMISES: The Tenants agrees to use the premises rented to Tenants by the Landlord for residential purposes only and for no other reason. No person other than the designated Tenants signing this Lease, may use the premises without the prior written consent of the Landlord, which consent the Landlord may grant or withhold in Landlord's absolute discretion.

14.     UTILITIES AND SERVICES: Unless a contrary provision is set forth in a written rider attached to this Lease, the Tenants agrees to pay for all of the utilities and services provided to the leased premises, including but not limited to heating, hot water service, electricity, trash removal, re-cycling, cable television and telephone. Tenants further agree to establish all of said accounts in Tenants' own name immediately upon taking occupancy of the premises. All utilities must be transferred at the conclusion of the Lease thus never being shut off.

15.     TENANTS' DUTY TO OBEY LAWS AND REGULATIONS: The Tenants must, at Tenants' expense, promptly comply with all laws, orders, rules, requests and directions of all governmental authorities, Landlord's insurers, Board of Fire Underwriters, Homeowners Association or Community Association, or similar groups. The Tenants also may not do anything that may increase the Landlord's insurance premiums; if Tenants does so, Tenants must pay the increase in premium as added rent. Tenants shall be liable to landlord for damages caused by Tenants' guests or occupants. Sidewalks, steps, entrance halls, walkways and stairs shall not be obstructed or used for any purposes other than ingress or egress. Tenants shall pay any fine charged against Landlord by a Homeowner's Association.

16.     TENANTS' ADDITIONAL OBLIGATIONS:

(a)     The Tenants shall keep the grounds and common areas of the leased premises, as well as the leased premises themselves, neat and clean. The Tenants shall be responsible for the removal of all garbage and trash from the premises, at the Tenants' expense. Tenants agree to maintain the yard on a regular basis by keeping all trash from the area and keeping weeds pulled and lawn mowed and watered.

(h)     The Tenants agrees that no noxious or offensive activity of any kind shall be permitted upon the premises, nor shall anything be done thereon which may be or may become a nuisance to the neighborhood. Tenants agree to use no machinery or any other apparatus, which would damage the Property or annoy other residents. Growing any kind of marijuana on site is strictly prohibited and is cause for immediate termination of the lease. This includes but not limited to cigarette smoking, marijuana smoking, electronic cigarettes, pipes or any other smoking apparatus.

(i)     Tenants agree that the terms and conditions set forth on the rider annexed to this Lease are incorporated herein.

(j)     Tenants are aware that the security will be deposited in an interest bearing account and waives any right or claim to any accrued interest thereon.

17.     REPAIRS:

(a)     The Tenants must maintain the premises and all of the equipment and fixtures in it. The Tenants agree, at Tenants' own cost and expense, to make any and all repairs to the premises and to replace the equipment and fixtures in the premises, whenever the need results from Tenants' acts or neglect. If the Tenants fail to make a repair or replacement, then the Landlord may do so and charge the Tenants the cost of said repair or replacement as additional rent, which additional rent shall be due and payable under the same terms and conditions as normal rent is due and payable.

(b)     Notwithstanding the foregoing, in the event the need for any repair or replacement of such equipment as the furnace, water heater or sewage system shall be necessary, and shall not have been caused by the Tenants' acts or neglect, the Landlord shall be solely responsible for the cost of said repair or replacement.

Carpet Cleaning & Touch up Paint: Tenants agrees upon vacating the property those carpets will be professionally cleaned at the expense of the Tenants and to the satisfaction of the Landlord. Tenants further agree to touch up all the areas that were freshly painted prior to Tenants occupation. It is agreed that these items will be done prior to formal walk-through, scheduled upon Tenants vacating the Property. Portable rental cleaning machines are not considered professional carpet cleaners.

18.     DESTRUCTION-FIRE OR OTHER CLAUSE: If the Property shall be partially damaged by fire or other cause without the fault or neglect of Tenants, visitors or agents, the damages shall be repaired by and at the expense of the Landlord, and the rent, until such damage is made good, shall be apportioned according to the parts of the Property which is usable by Tenants. No penalties shall accrue for reasonable

delay, which may arise beyond Landlord's control. Landlord may decide to demolish or to rebuild Property if property is totally damaged or rendered wholly unlivable by fire or other causes. Notice shall be given in writing within 90 days of such fire or cause, and thereupon the term of this Residential Rental Agreement shall expire by lapse of time upon the third day after such notice is given, and Tenants shall vacate the Property and surrender the same to Landlord or Landlord's agent.

19.    GLASS, COST OF REPLACEMENT: The Tenants agrees to replace, at the Tenants' own expense, all glass broken during the term of this Lease, regardless of the cause of the breakage. The Tenants agrees that all glass in said premises is whole as of the beginning of the term of this Lease.

20.    ALTERATIONS: The Tenants agrees not to make any alterations or improvements in the leased premises without the Landlord's written permission and any alterations and improvements made by the Tenants after obtaining the written permission of the Landlord shall be made at the sole expense of the Tenants and will become the property of the Landlord and be left behind in the leased premises at the end of the term of this Lease. Unless a contrary agreement was reached between the parties prior to such alterations or installations, the Landlord has the right to demand that the Tenants remove the alterations and installations before the end of the term of this Lease. That demand shall be by notice, given at least fifteen (15) days before the end of the term, and the removal shall be at the sole expense of the Tenants. The Landlord is not required to do or pay for any of the work involved in the installation or removal of the alterations unless it is so stated in this Lease.

21.    ASSIGNMENT AND SUBLEASE: The Tenants must not assign this Lease or sublet all or part of the leased premises, or permit any other person to use the premises, without the express prior written consent of the Landlord. If said consent is given, the Tenants remains bound by the terms of this Lease.

22.    LANDLORD'S LIABILITY: The Landlord is not responsible for any loss, expense or damage to any person or property, unless it occurs as a result of the Landlord's negligence. The Tenants must pay for any damages suffered and money spent by the Landlord, including legal fees, relating to any claim or arising from any act or negligence of the Tenants. The Tenants is responsible for all of Tenants' own acts, the acts of Tenants' own family, employees, guests and invitees. Landlord and Tenants further agree that Landlord will not be liable for personal injury or for damage to or loss of Tenants' personal property (furniture, jewelry, clothing, food etc.) from fire, flood, water leaks, rain, hail, ice, snow, smoke, explosions, interruption of utilities, or acts of God

unless the same is due to the acts or recklessness of the Landlord. LANDLORD
REQUIRES THE TENANTS SECURE RENTERS INSURANCE FROM MET LIFE
INSURANCE TO PROTECT AGAINST ALL OF THE ABOVE EVENTS. If landlord's
insurance company cannot provide renters insurance then Tenants' must show the
landlord as an "additional insured" on their policy. Tenants have inspected existing locks
and latches and agree that they are safe and acceptable, subject to Landlord's obligation
to make needed repairs of same upon written request of Tenants. Landlord shall have no
obligation to furnish alarms of any kind, security guards, or additional locks and latches.

23.      ENTRY BY THE LANDLORD: The Tenants agree to allow the Landlord to
enter the leased premises at any reasonable hour to repair, inspect, install or work upon
any fixture or equipment in said leased premises and to perform such other work that the
Landlord may decide is necessary. In addition, the Tenants agree to permit the Landlord
and/or the Landlord's agents, to show the premises to persons wishing to hire or purchase
the same during the reasonable hours of any day during the term of this Lease. The
Tenants will permit the usual notice of "To Let" or "For Sale" to be placed upon
conspicuous portions of the premises and remain thereon without hindrance or
molestation. Tenants agree that in the case of an emergency or apparent abandonment,
Landlord may enter the Property without consent of Tenants. Tenants agree to leave
property during any showings for the purpose of re-renting or selling of the premise at the
end of the lease period. Landlord is permitted to do unannounced inspection of property
at Landlord's sole discretion. If tenants are not home Landlord may enter the premises
for inspection purposes.

# CRIME FREE ADDENDUM

In consideration of the execution or renewal of a lease of the dwelling unit identified in the lease, Owner/Agent for Owner and Resident agree as follows:

1. Resident, any members of Resident's household, guest or other affiliated person as defined herein shall not engage in any act which is intended to facilitate any illegal or criminal activity. "Criminal Activity" is (1) as defined under Federal law, including but not limited to the Controlled Substance Act, 21 USC 802, or (2) as defined in Title 18 CRS, or (3) as defined under local laws, or (4) as defined as "Criminal Activity" in this Crime Free Addendum. Resident shall also not permit the premises to be used for Criminal Activity, which includes any conduct by any person that has the potential for becoming Criminal Activity, and shall not allow criminals to reside in or visit the Leased premises or surrounding Community. Resident understands that Owner has the right to prohibit such activities and agrees to comply with this Addendum, as a material condition of Resident's continued occupancy, as well as expressly agrees that Owner has the right to bar any person who commits or facilitates any Criminal Activity as defined herein or under applicable law. Resident further warrants that no occupant or guest in the premises is a registered sex offender and that all occupants/guests comply with the screening requirements of the Owner. Resident agrees that Owner may terminate the Lease on three (3) days' notice, if Owner determines that a registered sex offender occupies or visits the property at any time, or determines that Resident or other occupant/guest does not meet the screening policies of the Owner, a copy of which has been provided to Resident.

2. "CRIMINAL ACTIVITY" DEFINED. Criminal Activity specifically includes, but is not limited to, any possession, use, manufacture, sale, distribution, keeping, giving or growth of any "Controlled Substance" as defined under federal, state or local law, possession of any drug paraphernalia, any sex crime, sexual offender crime, street gang activity, unlawful possession or discharge of firearms, stalking, any crime that has as one of its elements the use, attempted use or threatened use of physical force against the person or property of another, and/or any intimidation, threats or harassment of any person. Resident agrees that **NO CONTROLLED SUBSTANCE OF ANY KIND IS ALLOWED**, including but not limited to marijuana, marijuana concentrate, cocaine, methamphetamine, or any other illegal drug, regardless of amount (and regardless of whether or not manufacture, growth, sale, distribution, use or possession of said drug is considered criminal under state or local law). Resident and Owner agree that any Criminal Activity as defined in this Addendum or at law includes any act which endangers the person and willfully and substantially endangers the property of Owner, co-residents, and/or other Persons, and also includes any breach of the lease agreement that otherwise jeopardizes the health, safety, and welfare of the Owner, their agent, or the Resident, or guest or that which involves imminent or actual serious property damage. Any such Criminal Activity constitutes a Substantial Violation under this Addendum and/or at law. Criminal Activity is prohibited, whether or not such conduct occurs in Resident's unit. This Addendum shall be construed broadly, to include all types of Criminal Activity. Resident shall both abstain from any criminal activity and proactively make efforts to prevent Criminal Activity by any other Persons. Resident shall immediately notify law enforcement when Resident first learns of any Criminal Activity or Substantial Violation as defined by this Addendum. Resident shall cooperate with law enforcement and the Owner with regard to same, and shall be responsible for the conduct or actions of Resident, as well as any affiliated Persons (which includes co-occupants, guests, invitees, licensees or any other persons present in the property as a result of Resident's tenancy) regardless of knowledge on Resident's part. Resident shall make all co-occupants, guests and/or any other affiliated persons aware of Resident's obligations, agreements, and duties under this Addendum. In defense of any eviction action (based on violation of this Addendum), Resident agrees not to claim he/she did not know any affiliated person was in violation of this Addendum.

3. <u>VIOLATION OF THE ABOVE PROVISIONS SHALL BE CONSIDERED A MATERIAL AND IRREPARABLE VIOLATION OF THE LEASE AGREEMENT AND SUFFICIENT CAUSE FOR IMMEDIATE TERMINATION OF TENANCY.</u> A <u>single</u> violation of any of the provisions of this addendum shall be deemed a serious violation and a material and irreparable non-compliance. It is understood that a <u>single</u> violation, as outlined above, shall be considered sufficient cause for immediate termination of the lease and notice of such termination shall be given in accordance with Article 40-107.5 of Title 13, C.R.S, which shall be a 3 day Notice to Quit. No other notice shall be required. Proof of violation/breach of this agreement resulting in a termination of the lease shall not require criminal charge or conviction, but shall require only a showing by a preponderance of the evidence. In case of a conflict between the provisions of this Lease addendum and any other provisions of the lease, the provisions of this addendum shall govern. Should any provision of this Lease Addendum be declared invalid by any Court of competent jurisdiction, the remaining provisions hereof shall remain in full force and effect regardless of such declaration. This Lease Addendum is incorporated into the lease, executed or renewed on the date set forth below.

Passage of Amendment 64 in no way changes this property's position on this issue. This is private property and Landlord expressly bans illegal drugs which violate the Federal Controlled Substances Act, including marijuana.

| | | |
|---|---|---|
| Owner/Property Manager    Date | Resident(s) | Date |
| | Resident(s) | Date |

Form- Crime Free Addendum
SBWP revised 10/13/14

**RIDER TO LEASE AGREEMENT BETWEEN**

**LaDawn K Westbrook, Landlord**
**and**
**Regina Gail Robertson Davis**

1.      The Tenants agrees that under no circumstances, without the prior written consent of The Landlord, shall the locks to the premises be changed.

2.  Tenants agree not to smoke anywhere in the house, including the garage and the basement.  No cigarette butts may be thrown in the yard or on premises.  Tenants further acknowledge that their agreement to refrain from smoking upon the premises personally, as well as to prevent any and all others in and upon the premises from smoking, was a material inducement to the Landlord in agreeing to rent the premises to the Tenants.  Tenants understand and agree that the breach of this covenant shall be deemed a material breach of this Lease, which shall subject the Tenants to eviction from the premises, as well as the obligation for additional damages, including but not limited to those associated with additional cleaning, painting and other remediation required to remove all effects of smoking from the premises.

3.  Occupants of home will be Regina Gail Robertson, Jonnel Davis and Josiah Baitton.

LaDawn Westbrook , Landlord

Regina Gail Robertson, Tenant

EXHIBIT
B

**From:** LaDawn Westbrook
**Sent:** Wednesday, May 3, 2017 9:21 AM
**To:** ontimelegal
**Subject:** complaint to be served

Regina Davis Robertson
3501 Columbine St
Denver 80205
BACK UNIT

she drives a van - silver or gray in color
she will sit in it to smoke

Meet LaDawn    she can help you find a great place to live in Denver

Denver a Great Place to Live

Respectfully,

LaDawn Westbrook
Senior Real Estate Specialist  (SRES)
Certified Distressed Property Expert (CDPE)
Master Certified Negotiation Expert (MCNE)
Five Star Professional since 2012

Exit Realty Cherry Creek
720-371-8798  cell
303-790-7955  fax

http://www.debtfreefinancialeducation.com

EXHIBIT C

# C|A|L|S
## COLORADO AFFORDABLE LEGAL SERVICES

April F. Jones
ajones@calslawfirm.com
303.996.0010 (phone)
866.819.8907 (fax)

LT001.1560

September 20, 2016

**Via 1st Class, Certified Mail Return Receipt or Email:**
LaDawn Westbrook
6139 Reed Way
Arvada, CO 80003

|  |  |
|---|---|
| **Re:** | **Regina Gail Robertson Davis (Tenant)** |
| **Property Address:** | **3501 Columbine Street, Denver, CO 80205** |

Dear Ms. Westbrook:

I represent Ms. Robertson regarding her tenancy at the above-referenced property. Ms. Robertson has authorized me communicate with you directly regarding this matter.

The Tenant's lease term with you is from February 13, 2016 through March 31, 2017. The Tenant paid a security deposit in the amount of $2,100.00. Her rent is $1400.00 per month, which is current to date.

Ms. Robertson has informed me of several problems that she has encountered with you at the property, chief among them is that you have discriminated against her and continually harassed and intimidated her and subjected her to a hostile living environment to deny her housing. You refuse to call her by her name. You talk down to her. Throughout the time she has lived at the property, you have threatened to throw her out for one reason or another.

Your letter dated September 4, 2016 threatens Ms. Robertson, in part, that

> "...you are late again Paying rent therefore you will voluntarily be moving out of the premises located at 3501 Columbine (West unit) without incident by September 18,2016 providing rent is paid for the month. If rent is not paid by September 6 with late fees, eviction date will Be September 11, 2016..."

Your letter dated September 11, 2016 threatens Ms. Robertson, in part, that

> "...Tenant was late in September and has been informed she needs to be out by September 20, 2016. If October rent is paid by September 18, tenant may stay until October 9 and must be fully moved out on or before October 9, 2016 or her belongings will be removed for her..."

Ms. Robertson and her family live in constant fear that you will enter her home and throw her property out on the street while she is away from the home. Pursuant to statute, a "*credible threat' means a threat, physical action, or repeated conduct that would cause a reasonable person to be in fear for the person's safety ... The threat need not be directly expressed if the totality of the conduct* would cause a reasonable person such fear." C.R.S. § 18-3-602(2)(b) (emphasis added)

It is an unlawful housing practice to otherwise make unavailable or deny or withhold from any person or discriminate against any person in housing because of race, disability, gender, in terms, conditions or privileges pertaining to any housing, rental 1 or lease thereof or in the furnishings of facilities or services in connection therewith. C.R.S. 24-34-502 (2016) It is also unlawful to harass and intimidate a tenant and create a hostile living environment.

After sending that letters, you gave Ms. Robertson a Demand for Compliance or Right to Possession Notice dated September 15, 2016, with which she timely complied. This is the only written notice she has received. Ms. Robertson denies smoking in the unit and she timely obtained renter's insurance. Nevertheless, in an attempt to force her to vacate the property, you listed the property for rent, showed it to potential renters, and published her name, telephone number and other personal information to strangers without her permission, which was a clear invasion of her privacy. On various occasions, without notice to Ms. Robertson, you and strangers entered her home in breach of the lease and the law. This has caused her serious stress and concern. Ms. Robertson demands that you stop that conduct immediately.

Ms. Robertson is not in default of the lease. She has every right to retain exclusive possession of the premises and she intends to do so and through to the end of the lease term. She demands that you cease and desist from any further abusive bullying and threatening behavior.

Please know, the law is clear. Self-help evictions in Colorado are prohibited and tenant rights are fiercely protected. C.R.S. § 38-12-510 (2016) Ms. Robertson is entitled to seek damages, including punitive damages, for any acts of unlawful removal or exclusion, threats, intimidation or other tactics by you that interfere with her right to peacefully remain in her home. Therefore, she demands that you immediately cease and desist from any such unlawful removal.

Ms. Robertson also demands reimbursement for the annual storm drainage service charge she paid that was sent to a previous tenant in the amount of $65.28. That expense is not a proper utility or service charge under the lease.

I am sure you are well aware, as a real estate associate broker, you are required to comply with the Code of Ethics and Standards of Practice of the National Association of Realtors. Under Colorado law, you must also act at all times with good faith and fair dealing toward all parties in contracts. *See Mahan v. Capitol Hill Internal Medicine P.C.*, 151 P.3d 685, 690 (Colo.App. 2006). Ms. Robertson has never given a notice of intent to vacate, and pursuing an action based on an erroneous claim of such will likely not end well. To avoid further legal action in this matter, please cease and desist any and all harassing, intimidating behavior and removal of Ms. Robertson's property and related matters.

Ms. Robertson requests that henceforth, all communications regarding this notice and removal issue shall be had with me in writing at 1410 Grant Street, Suite B105, Denver, Colorado 80203. Please note that I do not accept or waive notices or service for Ms. Robertson.

Very truly yours,

*April L. Jones*

Colorado Affordable Legal Services, LLC

cc: Regina Robertson

# EXHIBIT D

# Atlantis Community, Inc.

To: Ms. LaDawn Westbrook

From: Catrice Thomas

Re: Ms. Regina Robertson and Josiah Britton

March 29, 22017

Dear Ms. Westbrook:

I am writing this letter on behalf of Ms. Regina Robertson and her son Josiah Britton.

As you know, Josiah was shot in October 2016, which left him paralyzed and in a wheelchair.

I am a disability advocate working with the family. I am requesting the maximum extension for the family to remain in their current home due to the many challenges they are dealing with at this time.

I am working with the family to find resources to assist with the rent for April for $1425 and beyond. I also spoke to Ms. Robertson who is getting her financial circumstances back in order.

The family is also requesting the unit be made accessible the installation of grab bars by the toilet and in the shower.

We appreciate your support and understanding in advance!

I look forward to hearing from you soon!

Sincerely,

Catrice Thomas
Independent Living Specialist for People with Disabilities
303-733-9324, ext. 135

EXHIBIT

E



**Beth McCann**
**District Attorney**

**Second Judicial District**

201 W. Colfax Ave. Dept. 801
Denver, CO 80202

720-913-9000
Beth.McCann@denverda.org

March 24, 2017

RE:  Defendant:  **KEITH D HAMMOCK**
     Case No.:  16CR06595                    CTRM 5B
     Prosecutor:  ROBERT S NITIDO, DEPUTY DISTRICT ATTORNEY
     Lead Charge:  MURDER IN THE FIRST DEGREE, 18-3-102(1)(a), C.R.S.
     (F1)

To Whom it May Concern,

I am writing this letter on behalf of Ms. Regina Robertson, the mother of Josiah Britton, regarding the above referenced case. Josiah is the surviving listed victim for this case which caused life altering injuries. Josiah has been burdened with mobility issues due to being paralyzed, as well as psychological issues due to the guilt of losing his friend while he survived this incident.  Since the shooting on October 10th, 2016 Josiah has been working hard with the help and support of his mother to overcome numerous obstacles to try and live life again as a teenager. Josiah and Ms. Robertson will have to continue to battle situations that they will never be able to foresee due to the actions someone else has taken against Mr. Britton.

The life changes in conjunction with having to cooperate and participate with the Criminal Process could be extremely burdensome and stressful for anyone.  Ms. Robertson has expressed how difficult the transition has been getting her son back home and into school.  Having a stable place to reside would lessen the stress for the family and hopefully assist with Josiah's recovery process.

We are respectfully asking that you consider the impact this crime has had on the lives of Ms. Robertson and her son, Josiah Britton, as well as how many challenges this family still has to face in the coming year.

Thank you for your time and please feel free to contact me with any questions.

Sincerely,

Sabrina M Miller
Victim Advocate
(720) 913-9139
sxm@denverda.org

Para asistencia en Español por favor llame a el numero (720) 913-9020

EXHIBIT

F

 

University of Colorado
Anschutz Medical Campus

**Department of Rehabilitation**
13123 East 16th Ave, B285, Aurora, CO 80045

## LETTER OF MEDICAL NECESSITY / PRESCRIPTION

Patient: Lessiesteve Britton          Date of Service: 3/29/2017
Address: 3501 Columbine St           Date of Birth: 1/2/2002
Denver CO 80205

**TO WHOM IT MAY CONCERN:**
Lessiesteve "Josiah" is a 15 year old male with a T5 ASIA A spinal cord injury. Past medical history is significant for GSW x 2 sustained on 10/09/2016. In the emergency room injuries included a gunshot wound with injuries to spinal column and cord at T4 and 5 with exit out the right chest with injury to the right lung, pulmonic laceration of right upper and lower lobes, right hemothorax, right 3rd rib fracture and pericardial effusion. Once stable, he was transferred from Denver Health to Children's Hospital Colorado for inpatient rehabilitation from 11/02/2016 to 12/27/2016. He was senn in the Spinal Cord Injury Clinic on 3/7/2017 to establish outpatient rehab care.

Josiah and his family are in need of a stable housing environment due to lifelong adjustments to his spinal cord injury. This is also beneficial to maintain his current school attendance.

Modifications to the home include wheelchair accessibility, grab bars in the bathroom for mobility to the toilet and shower.

Estimated length of time: 6 months to 1 year

Feel free to contact the Rehab Clinic for further clarifications or needs.

Sincerely,

Pamela E. Wilson, M.D.
Associate Professor, University of Colorado
Department of Rehabilitation
720-777-2806

EXHIBIT

G

**DEMAND FOR COMPLIANCE OR RIGHT TO POSSESSION NOTICE**
**FOR**
PROPERTY LOCATED IN __DENVER_____ COUNTY

TO: __REGINA DAVIS AND ALLL OTHER OCCUPANTS_____(Tenant)

I hereby demand that you shall, within three days of the time this notice is served upon you, either comply with the covenant stated below or deliver to the Landlord the possession of the premises identified below:

Street Address __3501 COLUMBINE ST_____

City __DENVER_____ County __DENVER_____

| Subdivision | Lot | Block |
|---|---|---|
| LESSIG ADD | 16 AND 17 | 8 |

The covenant/condition with which you are to comply is (check one or both, as applicable)

☑ The payment to the landlord in the sum of $ __1,400.00_____ being past due rent and owed to the landlord from __MAY 1_____, 20 _17_____, to __MAY 30_____ 20 _17____.

☐ Other covenant of the lease that is being violated is: _____

_____

_____

_____

_____

The covenant/condition checked above constitutes default under the terms of the Lease, and this default entitles the Landlord to possession of the premises.

The rental for said premises is $ __40.00_____ per __DAY_____.

Dated: __MAY 24, 2017_____            LADAWN WESTBROOK
                                             Landlord/Property Manager _____ #94633
                                             _____
                                             _____Attorney
                                             303.770.6664

**RETURN OF SERVICE**

I certify that I served this notice on _____(date), in _____(County, Colorado by my selection below:

☐ By leaving a true copy with _____(Full Name)

☐ By posting in a conspicuous place on the premises at _____

_____

_____
Signature

# AMENDED NOTICE TO QUIT
**(Please Type or Print Legibly)**

To: REGINA DAVIS AND ALL OTHER OCCUPANTS

Pursuant to §13-40-107, C.R.S., you are hereby notified by the undersigned owner that your tenancy of the land and premises described below is terminated as of MAY 31, 2017 _____ (date) at 10:00 p.m. ____ (time) and you are accordingly notified to vacate said premises and surrender possession thereof on or before said date and time.

| | |
|---|---|
| Street Address 3501 COLUMBINE | |
| City DENVER | County DENVER |

| Subdivision LESSIG ADD | Lot 16 AND 17 | Block 8 |
|---|---|---|

The grounds for termination are as follows: end of extended term of lease.  Tenant is on a month to month lease. Additionally tenant has failed to pay rent due of $1400 for the month of May, 2017.

Date: MAY 24, 2017

LADAWN WESTBROOK
Landlord/Owner
By: _____  #9433
Landlord/Owner's ~~Agent~~ Attorney  303. 770. 666.

## CERTIFICATE OF SERVICE

I hereby certify that I served this Notice to Quit on _____ (date) in _____ (County), Colorado by my selection below:

☐ By leaving a true copy with _____ (Full Name) who is ☐the Tenant, ☐other person occupying such premises, or a ☐member of the tenant's family above the age of fifteen years and residing on or in charge of the premises _____ (Full Name of Person)
☐ By posting in a conspicuous place on the premises at _____

_____
Signature

## Notice to Quit - §13-40-107, C.R.S.

(1) A tenancy may be terminated by notice in writing, served not less than the respective period fixed before the end of the applicable tenancy, as follows:
   (a)  A tenancy for one year or longer, three months;
   (b)  A tenancy of six months or longer but less than a year, one month;
   (c)  A tenancy of one month or longer but less than six months, ten days;
   (d)  A tenancy of one week or longer but less than one month, or a tenancy at will, three days;
   (e)  A tenancy for less than one week, one day.

(2) Such notice shall describe the property and the particular time when the tenancy will terminate and shall be signed by the landlord or tenant, the party giving such notice or his agent or attorney.

(3) Any person in possession of real property with the assent of the owner is presumed to be a tenant at will until the contrary is shown.

(4) No notice to quit shall be necessary from or to a tenant whose term is, by agreement, to end at a time certain.

(5) Except as otherwise provided in §38-33-112, C.R.S., the provisions of subsections (1) and (4) of this section shall not apply to the termination of a residential tenancy during the 90-day period provided for in said section.

JDF 97   10/06   NOTICE TO QUIT